IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE L. NATIVIDAD,<br><br>            Petitioner,<br><br>     vs.<br><br>FRED FIGUEROA, Warden,<br><br>            Respondent. | No. C 12-00891 YGR (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION AS UNTIMELY; AND DENYING A CERTIFICATE OF APPEALABILITY**<br><br>(Docket No. 12) |

**INTRODUCTION**

Petitioner Jose L. Natividad, a state prisoner, filed a *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Pet."). Before the Court is Respondent's motion to dismiss ("MTD") the instant petition as untimely under 28 U.S.C. § 2244(d) -- the statute of limitations set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss the petition as untimely.

**BACKGROUND**

On October 22, 1996, by a jury in the Santa Clara County Superior Court, Petitioner was convicted of ten counts of lewd and lascivious touching of a minor by force in violation of California Penal Code § 288(b). (MTD, Ex. A at 1.) The state superior court sentenced him to sixty years in state prison. (*Id.* at 11.) Petitioner appealed his conviction, and the California Court of Appeal

affirmed the judgment on October 27, 1998.  (*Id.*, Ex. B.)  On December 7, 1998, Petitioner filed a petition for review in the California Supreme Court, which denied review on January 20, 1999.  *Id.*, Ex. C.)

On July 22, 2007, Petitioner filed a petition for writ of habeas corpus in Santa Clara County Superior Court, which denied the petition on August 13, 2008.  (Pet. at 4.)

On May 15, 2009, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which denied the petition on May 27, 2009.  (MTD, Ex. E.)

On August 8, 2011, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (MTD, Ex. F.)  The state high court denied the petition on December 21, 2011, on the grounds that it was untimely.  (*Id.*, Ex. G.)

On April 23, 2012, Petitioner filed the instant federal petition.

On December 10, 2012, Respondent filed his motion to dismiss the petition for writ of habeas corpus as untimely.  (Docket No. 12.)

On February 11, 2013, Petitioner filed his opposition ("Opp'n").  (Docket No. 15.)  On May 9, 2013, Respondent filed his reply to the opposition.  (Docket No. 20.)

## **DISCUSSION**

AEDPA, which became law on April 24, 1996, imposed a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1).

The one-year period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C.

§ 2244(d)(1)(A). AEDPA's one-year time limit, however, did not begin to run against any state prisoner before the date of the Act's enactment. *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1287 (9th Cir. 1997) (allowing § 2244(d)'s limitation period to commence before AEDPA's enactment would have an impermissible retroactive effect), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc).

A state prisoner with a conviction finalized after April 24, 1996, such as Petitioner, ordinarily must file his federal habeas petition within one year of the date his process of direct review came to an end. *See id.* "[W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)" and is only final at the conclusion of direct review of "the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009). However, the dismissal of a direct appeal as untimely does not constitute "the conclusion of direct review" under § 2244(d)(1)(A) where the petitioner was not first granted leave to file an out-of-time direct appeal, by which the pendency of his direct appeal was restored. *Randle v. Crawford*, 604 F.3d 1047, 1054-55, 1056 (9th Cir. 2010) (rejecting the argument that the state court's dismissal of an untimely notice of appeal marked the beginning of the one-year limitations period because the state court never granted leave to file an untimely direct appeal, distinguishing this case from *Jimenez*, 555 U.S. at 121, where the state court granted petitioner the right to file an out-of-time appeal).

"Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).[1] Accordingly, if a petitioner fails to

---

[1] Title 28 U.S.C. § 1257(a) authorizes the United States Supreme Court to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had ... where any title, right, privilege, or immunity is specially set up or claimed by the Constitution." In a criminal prosecution, finality generally is defined by a judgment of conviction and the imposition of a sentence. *Florida v. Thomas*, 532 U.S. 774, 776-77 (2001) (finding no final judgment, and thus no jurisdiction to review state supreme court's decision on constitutionality of search, where case remanded to trial court for further proceedings). There are some limited exceptions, however. *See id.* at 777-78 (discussing certain circumstances in which Supreme Court has treated state-court judgments as final for jurisdictional purposes although there were further proceedings to take place in state court).

seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires. *See Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review); *Bowen*, 188 F.3d at 1159 (same). As the Eighth Circuit put it: "[T]he running of the statute of limitations imposed by § 2244(d)(1)(A) is triggered by either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." *Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998), *cert. denied*, 525 U.S. 1187 (1999).

In the present case where Petitioner did not seek a writ of certiorari from the Supreme Court, the limitations period started running on April 21, 1999, ninety days after January 20, 1999 -- when the California Supreme Court denied review on direct appeal. *See Miranda v. Castro*, 292 F.3d at 1065. Thus, Petitioner had one year from the time the limitations period started running -- or until April 21, 2000 -- to file his federal habeas petition. Because he did not file the present petition until April 23, 2012 -- more than 11 years after the limitations period had expired -- the petition is untimely unless he can show that he is entitled to statutory or equitable tolling.

**I.      Statutory Tolling**

The petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" *Dictado v. Ducharme*, 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244 (d)(2)), *abrogated on other grounds by Pace v. DiGuglielmo,* 544 U.S. 408 (2005).

Petitioner filed his first state habeas petition on July 22, 2007 -- well after the April 21, 2000 expiration of the limitations period. A state habeas petition filed *before* the limitations period begins

4

to run tolls the limitation period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001).  However, an application for state post-conviction or other collateral review filed *after* the limitations period has ended cannot toll the limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (Section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed, even if the state petition was timely filed).  Section 2244(d)(2) cannot "revive" the limitations period once it has run (i.e., restart the clock to zero); it can only serve to pause a clock that has not yet fully run. *See Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) (once the limitations period has expired, collateral petitions can no longer serve to avoid the statute of limitations).

Furthermore, in denying Petitioner's last state habeas petition, the California Supreme Court cited *In re Robbins*, Cal.4th 770, 780 (1998).  A California court's citation of *In re Robbins* is a clear ruling that the petition was untimely. *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (denial of petition with citation to *Robbins* at page opinion discusses timeliness determinations was clear denial on timeliness grounds and therefore petition was neither "properly filed" nor "pending"). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for the purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (citing *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).  In *Pace*, the Supreme Court held that "[b]ecause the state court rejected petitioner's [postconviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under §2244(d)(2)." *Id.* at 413.  Accordingly, Petitioner is not entitled to statutory tolling under § 2244(d)(2) because the limitations period had already run.  Accordingly, statutory tolling is not sufficient to overcome the time bar to Petitioner's federal habeas petition.

Because Petitioner did not meet the one-year requirement for filing the instant federal habeas petition, and he is not entitled to statutory tolling, his petition is barred as untimely under 28 U.S.C. § 2244(d)(1), unless he can show that he is entitled to equitable tolling of the limitations period.

## II.     **Equitable Tolling**

The Supreme Court has determined that AEDPA's statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).  "When

external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Equitable tolling will not be available in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Beeler*, 128 F.3d at 1288. The prisoner must show that "the 'extraordinary circumstances' were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted). Another statement of the standard is that a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006).

The Ninth Circuit has said that the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Indeed, "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Id.* at 1066 (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). However, "[r]ather than let procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor." *Lott v. Mueller*, 304 F.3d 918, 920 (9th Cir. 2002). When a prisoner is proceeding *pro se*, his allegations regarding diligence in filing a federal petition on time must be construed liberally. *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

Where a prisoner fails to show any causal connection between the grounds upon which he asserts a right to equitable tolling and his inability to file a timely federal habeas petition, the equitable tolling claim will be denied. *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005), *amended*, 447 F.3d 1165 (9th Cir. 2006). He must, furthermore, show that his untimeliness was caused by an external impediment and not by his own lack of diligence. *Bryant v. Arizona Attorney Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007).

///

Petitioner claims that he is not fluent in English, and that his "lack of understanding of the [E]nglish language is a principal cause for the delay." (Opp'n. at 4.) "Extraordinary circumstances" that warrant equitable tolling may include a non-English speaker's inability to procure either legal materials in his own language or translation assistance from an inmate, library personnel or other source during the running of the limitations period, *see Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006) (remanding case to district court for development of facts concerning whether, as petitioner alleged, during the relevant time period he lacked "English language ability," was denied access to Spanish-language legal materials, could not procure the assistance of a translator and acted with due diligence). However, a petitioner's language limitations do not per se justify equitable tolling; rather, equitable tolling may be justified only if language barriers actually prevent timely filing. *See Mendoza*, 449 F.3d at 1069.

Here, equitable tolling on this ground must be denied because Petitioner fails to show that this was the case. First, the delay was significant, not a few weeks or months, but years. Second, there is no allegation that Petitioner was denied access to Spanish-language legal materials. Third, although he claims that "at the time" he had the assistance of another inmate to whom he had limited accessibility, (Opp'n. at 4), Petitioner fails to show that he acted with due diligence. *See Bryant*, 499 F.3d at 1061 (no equitable tolling where petitioner was not diligent in that he failed to seek any state court relief for six years, or to take advantage of available paralegal assistance). Petitioner's lack of diligence is evident from his delay in seeking state collateral review until over eight years past the expiration of the limitations period. *See supra* at 2. Accordingly, in the absence of a "causal connection" between his lack of English proficiency and the inability to timely file his federal petition, and without a showing of reasonable diligence by Petitioner, equitable tolling is unavailable on this ground.

Petitioner also claims that he has managed to draft legal documents with the limited assistance of another inmate, and that he has "no education of American Law, nor of the Law of my native country." (*Id.*) However, ignorance of the law and lack of legal sophistication do not alone constitute extraordinary circumstances warranting equitable tolling. *Rasberry*, 448 F.3d at 1154

(cataloguing cases from other circuits and holding that a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance); *see also Hughes v. Idaho State Bd. of Corrs.*, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of *pro se* petitioner insufficient cause to avoid procedural bar); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299-300 (5th Cir. 1998) (*pro se* status during state habeas proceedings did not justify equitable tolling); *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (*pro se* status, illiteracy, deafness and lack of legal training does not justify equitable tolling). Therefore, Petitioner is not entitled to equitable tolling based solely on his ignorance of the law.

### III. Actual Innocence Exception

Lastly, Petitioner claims that he is actually innocent because he was out of the country during the time of some of the alleged crimes, including "Ground 8." (Opp'n. at 5.) Petitioner asserts that failure to consider his claims would result in a "'fundamental miscarriage of justice.'" (*Id.* at 2, citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Claims which challenge the constitutionality of the length of a sentence are subject to review at any time under the standard of review which allows a federal court to hear the merits of successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute a miscarriage of justice. *See Sawyer v. Whitley*, 505 U.S. 333, 330-40 (1992). Under the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. 527, 543-44 (1986). However, the Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327; *see, e.g., Wildman v. Johnson*, 261 F.3d 832, 842-43 (9th Cir. 2001) (petitioner must establish factual innocence in order to show that a fundamental miscarriage of justice would result from application of procedural default). Under this exception, a petitioner may establish a procedural "gateway" permitting review of claims which otherwise would be barred from federal review if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n.32.

As mentioned above, a credible showing of "actual innocence" under *Schlup*, excuses the statute of limitations period established by AEDPA. *Lee*, 653 F.3d at 931. Under this "equitable exception," a petitioner "may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Id.* In order to pass through the *Schlup* gateway, a petitioner must produce sufficient proof of his actual innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup*, 513 U.S. at 315 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316. A petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. This exacting standard "permits review only in the 'extraordinary' case," but it "does not require absolute certainty about the petitioner's guilt or innocence." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327).

A petitioner must support his claims "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. "By enumerating [these] categories of evidence that could prove innocence, the Supreme Court made clear that less reliable kinds of evidence cannot support an actual innocence claim." *Lee*, 653 F.3d at 945-46 (Kozinski, J. concurring). A reviewing habeas court then "consider[s] all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *House*, 547 U.S. at 538 (internal quotation marks removed). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 329). The court is to "assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* In sum, a petitioner must show that it is more likely than not that "no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Stated another way, a petitioner must "persuade [a reviewing court] that every juror would have voted to acquit him." *Lee*, 653 F.3d at 946 (citing *Schlup*, 513 U.S. at 327) (Kozinski, J. concurring).

9

Petitioner's claim of actual innocence is based on the alleged lack of physical evidence, e.g., "no crime scene investigation, no medical examinations." (Opp'n. at 6.) He claims that his conviction was based on the testimonies of four people who all lied to destroy him. (*Id.*) He claims that he has gathered new alibi evidence showing that he was out of the country at the time some of the crimes occurred, including "Ground 8." (*Id.* at 5-6.) In reply, Respondent asserts that this "new evidence" is not really anything "new" and does not establish Petitioner's "actual innocence" because Petitioner's alibi and claim of actual innocence were presented at trial and rejected by the jury. (Reply at 6.)

Petitioner was charged with ten counts of forcible lewd and lascivious conduct upon a child under age 14. (Docket No. 12, Ex. B at 4.) Counts one through six named Petitioner's step-granddaughter Valerie as the victim; counts seven through ten named Luis, Petitioner's natural son. (*Id.*) Luis testified at trial that Petitioner committed several sexual offenses against him beginning in the first grade through the fifth or sixth grade, including lewd touching, masturbation and sodomy. (*Id.* at 2-3.) Valerie testified at trial that Petitioner molested her when she was six years old until she was about 13 years old, including lewd touching, masturbation, digital penetration, and vaginal intercourse. (*Id.* at 3.) Each count referred to time periods covering several months, e.g., count one covered January 1, 1987 to April 1, 1987, rather than any specific date; the alleged acts spanned thirteen years, from January 1, 1987 to December 31, 1990. (*Id.* at 4.) Petitioner's wife Velia testified at trial that Petitioner wrote her two letters while he was in jail on the charges involving Luis and Valerie. (*Id.* at 6.) In the letters, Petitioner did not deny the charges but rather asked for forgiveness and blamed people for bewitching him. (*Id.*) For the defense, Nancy Gonzalez-Sarrezalez[2] testified that Velia was always angry with Petitioner when she visited him, and once threatened to put him in jail. (*Id.*) Petitioner's two brothers testified on his behalf, stating that Petitioner was usually away from home for work and that he would visit his family only about once every two months. (*Id.*) Defense counsel argued that Petitioner lacked the opportunity to commit

---

[2] Petitioner had been living at her home for a few years.

10

the molestations and that the children were part of Velia's conspiracy to punish Petitioner for affairs he had with other women. (*Id.*) The jury found Petitioner guilty on all ten counts. (*Id.*)

As mentioned above, the actual innocence exception applies only if the petitioner presents evidence which creates a colorable claim of actual innocence, that is, that the petitioner is factually innocent of the charge for which he is incarcerated as opposed to legally innocent as a result of legal error. *See Schlup*, 513 U.S. at 321; *see also Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (actual innocence means factual innocence, not merely legal insufficiency). Petitioner has not introduced new evidence or pleaded facts to give this Court confidence in his innocence. Rather, the proffered "new evidence" consisting of names of co-employees, addresses where he lived, stores where he shopped, cars bought, and receipts of bills he paid, (Opp'n. at 5), go towards proving alibi. However, Petitioner already presented evidence at trial trying to prove that he lacked opportunity to commit the molestations which the jury considered and rejected. *See supra* at 10. Given the fact that the victims' recollections did not involve specific dates, it is not likely that more alibi evidence would convince a reasonable jury that Petitioner did not have any opportunity to molest the victims during their pre-pubescent years. Second, his allegation that Velia offered to change her testimony for $5,000, even if true, is not sufficient to convince this Court that Petitioner is factually innocent of the charges. His attack on Velia's credibility is no different from the defense offered at trial, and her changed testimony would not alter the impact of the letter he wrote to her from jail, indicating his guilty conscience. Accordingly, Petitioner has failed to show that with this additional "new evidence," it is more likely than not that "no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.

In sum, Petitioner's federal habeas petition is untimely, and he has not offered the Court a sufficient reason why he should be entitled to statutory or equitable tolling. Moreover, as explained above, Petitioner's claim that "new evidence" supports his actual innocence is without merit.. Accordingly, the Court GRANTS Respondent's motion to dismiss.

///

///

**IV.     Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *Id.* at 484; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000). As each of these components is a "threshold inquiry," the federal court "may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Slack*, 529 U.S. at 485. Supreme Court jurisprudence "allows and encourages" federal courts to first resolve the procedural issue. *See id.*     For the reasons stated above, Petitioner has failed to show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484-85. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.     Respondent's motion to dismiss petition for writ of habeas corpus (Docket No. 12) is GRANTED, and this action is DISMISSED with prejudice.

2.     The Court DENIES a certificate of appealability as to Petitioner's entire petition.

3.     The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

///

///

4. This Order terminates Docket No. 12.

IT IS SO ORDERED.

DATED: July 26, 2013

                                              **YVONNE GONZALEZ ROGERS**
                                              **UNITED STATES DISTRICT COURT JUDGE**